843 So.2d 378 (2003)
DEEP SOUTH SYSTEMS, INC., Appellant,
v.
Lester HEATH d/b/a Quality Architectural Metal Sales & Service, Appellee.
No. 2D02-3318.
District Court of Appeal of Florida, Second District.
May 2, 2003.
*379 John S. Mills of Mills & Carlin, P.A., Jacksonville, for Appellant.
Robert G. Fegers of Robert F. Fegers, P.L., Winter Haven, for Appellee.
STRINGER, Judge.
Deep South Systems, Inc. ("Deep South") seeks review of the summary final judgment requiring Deep South to pay Lester Heath d/b/a Quality Architectural Metal Sales & Service ("Quality") monies due under a series of contracts to perform roofing services for Deep South. Deep South argues that the trial court erred in granting Quality's motion for summary judgment and denying Deep South's motion for summary judgment because Quality was precluded from enforcing its contracts as a matter of law. Because Quality was not a certified or registered contractor when it entered into the contracts with Deep South, we conclude that the contracts are unenforceable. Accordingly, we reverse.
Deep South entered into a subcontract agreement with M.M. Parrish Construction, the general contractor, for various labor, materials, and equipment required for the construction of two public school facilities. Deep South then entered into a series of written sub-subcontracts with Quality for the provision of all labor, tools, and equipment for the installation of all roof, wall, and soffit panels on the facilities. While Deep South is a state-certified licensed roofing contractor, Quality was not licensed at the time it entered into the contracts.[1]
During the course of construction, Deep South paid Quality the amounts it requested in twenty-four applications for payment, but Deep South did not pay the retainage[2] amount of $22,911.66 when the work was completed. When Deep South failed to pay Quality the retainage, Quality filed suit seeking payment under the contracts. The trial court granted summary judgment in favor of Quality, finding that the retainage was due under the contracts. The trial court also denied Deep South's motion for summary judgment in which Deep South argued that the contracts were unenforceable because Quality was not a licensed contractor.
On appeal, Deep South challenges both the trial court's denial of its motion for summary judgment and the summary judgment in favor of Quality. Deep South's challenge to the denial of its motion for summary judgment requires reversal. Our reversal on this issue renders Deep South's challenge to the summary judgment moot.
Orders granting or denying motions for summary judgment are reviewed de novo. Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla.2000). "Summary judgment is appropriate if *380 there is no genuine issue of material fact and if the moving party is entitled to a judgment as a matter of law." Id.
Section 489.128, Florida Statutes (2001), provides that contracts made by unlicensed contractors are unenforceable. Because Quality was not a licensed contractor when it entered into the contracts, Deep South argues that the parties' contracts are unenforceable as a matter of law. Quality concedes that it was not licensed, but argues that, under section 489.113, Florida Statutes (2001), it was not required to have a license because it was working under the supervision of a licensed contractor.
Section 489.113(2) provides that "[n]o person who is not certified or registered shall engage in the business of contracting." That section provides an exception when (1) the person is being supervised by someone who is certified or registered; (2) the construction work is within the scope of the supervisor's license; and (3) the person being supervised is not performing the type of construction work that would require a contractor's license under sections 489.105(3)(d)-(o), Florida Statutes (2001). One type of construction work that would require a contractor's license under section 489.105(3)(e) is that of a "roofing contractor."[3]
Quality argues that it qualified for the exception to the licensing requirement under section 489.113(2) because its work was performed under the supervision of Deep South, which is a certified licensed roofing contractor. Assuming Quality's roofing work was supervised by Deep South as a certified licensed roofing contractor, Quality qualified for the exception only if it was not performing the work of a "roofing contractor" under section 489.105(3)(e). Section 489.105(3)(e) defines a "roofing contractor" as "a contractor whose services are unlimited in the roofing trade and who has the experience, knowledge, and skill to install, maintain, repair, alter, extend, or design ... and use materials and items used in the installation, maintenance, extension, and alteration of all kinds of roofing." "Contractor" is defined as "the person who is qualified for, and shall only be responsible for, the project contracted for and means ... the person who, for compensation, undertakes to ... construct, repair, alter, remodel,... or improve any building or structure." § 489.105(3).
Quality's act of entering into contracts to install all roof, wall, and soffit panels on a new building made it the entity responsible for and the entity undertaking the improvement of a building. Thus, Quality qualified as a "contractor." § 489.105(3); cf. Sterner v. Phillips, 721 So.2d 450, 452 (Fla. 5th DCA 1998) (holding that a tenant who was to expend money and labor to renovate property was a "contractor" under section 489.105(3)); Stokes v. Millen Roofing Co., 466 Mich. 660, 649 N.W.2d 371, 375 (2002) ("A `contractor' is defined in the statute as `a person who, pursuant to a contract with the owner or lessee of real property, provides an improvement to real property.' MCL 570.1103(5). Millen built a slate roof pursuant to a contract with the owners. Therefore, it is a contractor."). This undertaking shows that Quality has the experience, knowledge, and skill to install and use materials and items used in the installation *381 of roofing and qualifies as a "roofing contractor" under the plain language of section 489.105(3)(e). Cf. Terranova v. State, 474 So.2d 1206, 1208 (Fla. 2d DCA 1985) (affirming trial court's finding that a person who applies sealant to a roof, cleans the gravel off the roof, replaces portions of the roof, and installs felt on a roof is a "roofing contractor" under section 489.105(3)(e)); Op. Att'y Gen. Fla. 96-46 (1996) (stating that the installation of shingles on an already existing roof must be subcontracted to a licensed roofing contractor).
Because Quality was performing the work of a roofing contractor under section 489.105(3)(e), it was engaged in work that requires a license under that section. Accordingly, even if Quality was supervised by a certified licensed roofing contractor, Quality did not meet the criteria for the exception to the licensing requirement under section 489.113(2). Quality was therefore an "unlicensed contractor," and the contracts it entered into with Deep South are unenforceable as a matter of law. See § 489.128. For these reasons, the trial court erred in denying Deep South's motion for summary judgment.
Reversed and remanded.
FULMER and KELLY, JJ., Concur.
NOTES
[1] Florida law classifies construction contractors into two groups: certified contractors or registered contractors. § 489.105(8), (10), Fla. Stat. (2001). The two groups differ in the requirements for licensure. See § 489.111, Fla. Stat. (2001) (setting out the requirements of certification licensure); § 489.117, Fla. Stat. (2001) (setting out the requirements for registration licensure). A certified contractor may perform construction work anywhere in Florida, see § 489.113(1), Fla. Stat. (2001), while a registered contractor may only perform work covered by the registration in the county, municipality, or development district for which the registration applies, see § 489.117(1)(b).
[2] Retainage is a percentage of the progress payments the contractor holds back for the purpose of curing or mitigating any subsequent default by the subcontractor and is paid upon satisfactory performance by the subcontractor. See Transamerica Ins. Co. v. Barnett Bank of Marion County, N.A., 540 So.2d 113, 115 (Fla.1989).
[3] Other types of work include sheet metal contracting, Class A, B, and C air-conditioning contracting, mechanical contracting, commercial and residential swimming pool and spa contracting, swimming pool/spa servicing contracting, plumbing contracting, underground utility and excavation contracting, and solar contracting. See § 489.105(3)(d), (f)-(o), Fla. Stat. (2001).